IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-02595-PAB-SKC

CHESTER LEE RENEAU,

      Plaintiff,

v.

MARY CARDINAS, in her individual capacity,
JUDY BRIZENDINE, in her individual capacity, and
DOCTOR LUIS CABILING, in his individual capacity,

      Defendants.

---

## ORDER

---

      This matter is before the Court on the Report and Recommendation Re: Motions for Summary Judgment [#114; #117] [Docket No. 143].  Defendants filed their objections to the magistrate judge's recommendation on March 23, 2020.  Docket No. 144.  Plaintiff filed objections on March 24, 2020.  Docket No. 145.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

      On March 8, 2017, plaintiff, an inmate who was incarcerated at Crowley County Correction Facility ("CCCF"), a Colorado Department of Corrections-contracted facility, slipped and fell in his cell.  Docket No. 114 at 1-2, ¶¶ 1-2.  Plaintiff did not immediately realize the extent of his injuries and proceeded to breakfast.  *Id.* at 2-3, ¶¶ 3-4.  On his

---

[1] The following facts are undisputed unless otherwise indicated.

way back from breakfast, plaintiff's leg stiffened and he noticed bruises on his left leg and shoulder.  *Id.* at 3, ¶ 5.  Plaintiff requested to be sent to medical, where Nurse Mary Cardinas was tasked with evaluating him.  *Id.*, ¶ 7.

Ms. Cardinas asked plaintiff what plaintiff wanted her to examine, to which plaintiff responded that he needed both his shoulder and leg examined.[2]  *Id.*, ¶ 8.  Ms. Cardinas said something to the effect that she would not or could not examine both plaintiff's leg and shoulder at the same time on the same day.  *Id.*; Docket No. 119 at 9. Plaintiff then threatened Ms. Cardinas with legal action if she did not examine both of his complained of injuries.  Docket No. 114 at 3, ¶ 8.  A heated argument ensued and, because plaintiff has a history of being volatile when he feels disrespected, security escorted plaintiff out of the medical unit.  *Id.*, ¶ 9; *see also* Docket No. 114-1 at 8 ("I have this history of being volatile toward people who are real disrespectful and causing me a lot of harm."); Docket No. 151 at 1 ("Any reasonable person would have gotten angry and wanted to hit Ms. Cardinas for refusing them medical treatment for their fractured leg and torn rotator cuff.").  Plaintiff was not examined by Ms. Cardinas or any other medical professional that day.  Docket No. 114 at 3, ¶ 10.

On two separate days in mid-March, nurses on duty examined plaintiff's leg and shoulder.  *Id.*, ¶ 12; *see also* Docket No. 119 at 16 (stating that it was March 13 and March 14, not March 12 and March 13, when nurses examined plaintiff).  X-rays, which are only conducted once a week at CCCF, were ordered for both plaintiff's left leg and

---

[2] The exact phrasing of this conversation is disputed.  *See* Docket No. 119 at 9. The substance, however, is not.

shoulder.  Docket No. 114 at 4, ¶¶ 13-14.  A temporary cast was put on plaintiff's leg the same week as his fall.  *Id.*, ¶ 15.  The following Monday, Dr. Luis Cabiling put a permanent cast on plaintiff's leg.  *Id.*, ¶ 17.  During this appointment, plaintiff requested that Dr. Cabiling order an MRI for plaintiff's shoulder.  *Id.*, ¶ 18.  Dr. Cabiling refused to order an MRI.  *Id.*  Dr. Cabiling did, however, give plaintiff a cortisone shot on at least one occasion.  *Id.* at 5, ¶ 23; *see also* Docket No. 119 at 18-19.

Plaintiff filed a grievance, which was reviewed by Judy Brizendine, the Health Services Administrator for CCCF, to complain about the treatment he received from Ms. Cardinas and Dr. Cabiling.  Docket No. 119 at 1-2; Docket No. 114 at 5, ¶ 25.  Although plaintiff met in person with Ms. Brizendine in regards to his grievance, she did not examine plaintiff.  Docket No. 114 at 5, ¶ 25; Docket No. 119 at 1-2.

Plaintiff filed this lawsuit on October 30, 2017.  *See* Docket No. 1.  Plaintiff brings claims pursuant to 42 U.S.C. § 1983 for deliberate indifference to his medical needs against all defendants.  Docket No. 12 at 8-13.

Defendants filed a motion for summary judgment on August 1, 2019 arguing that (1) there is no evidence that Ms. Cardinas disregarded any medical needs, (2) that plaintiff's claim against Dr. Cabiling fails because Dr. Cabiling's refusal to order an MRI is a disagreement on the type and course of medical treatment, and (3) Ms. Brizendine could not have disregarded plaintiff's medical needs because she never examined plaintiff.  *See* Docket No. 114 at 5-9.

Plaintiff filed a motion for summary judgment on August 5, 2019.  *See* Docket No. 117.  Plaintiff argues that he is entitled to summary judgment against all defendants

because each disregarded a risk to his medical needs by failing to properly examine, treat, and diagnose his injuries.  *Id.* at 3-8.

The Court referred both motions to Magistrate Judge Kato Crews.  *See* Docket Nos. 115, 118.  Magistrate Judge Crews issued his recommendation on March 9, 2020. *See* Docket No. 143.  Magistrate Judge Crews recommends denying plaintiff's motion in its entirety, granting defendants' motion as to Dr. Cabiling and Ms. Brizendine, and denying defendants' motion as to Ms. Cardinas.  *Id.* at 12, 14, 16-17.  Defendants filed objections to the magistrate judge's recommendation on March 23, 2020.  Docket No. 144.  Plaintiff filed objections on March 24, 2020.  Docket No. 145.

## II.  LEGAL STANDARD

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  An objection is "proper" if it is both timely and specific.  *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute."  *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.  *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").  The Court therefore reviews the non-objected

4

to portions of the recommendation to confirm that there is "no clear error on the face of the record."  Fed. R. Civ. P. 72(b), Advisory Committee Notes.  This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review.  Fed. R. Civ. P. 72(b).  Because plaintiff is proceeding pro se, the Court will construe his objections and pleadings liberally without serving as his advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations

5

omitted).  "Once the moving party meets this burden, the burden shifts to the

nonmoving party to demonstrate a genuine issue for trial on a material matter."

*Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir.

1994).  The nonmoving party may not rest solely on the allegations in the pleadings,

but instead must designate "specific facts showing that there is a genuine issue for

trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To

avoid summary judgment, the nonmovant must establish, at a minimum, an inference of

the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.

When reviewing a motion for summary judgment, a court must view the evidence in the

light most favorable to the non-moving party.  *Id.*

## III.  ANALYSIS

Plaintiff's claims against each defendant are for violation of plaintiff's right under

the Eighth Amendment to be free from deliberate indifference to his known medical

needs.  Docket No. 12 at 8-13.  Plaintiff brings these claim pursuant to § 1983.  *Id.*

A claim for deliberate indifference to serious medical needs has an objective and

a subjective component.  The objective component requires that the medical need be

"sufficiently serious."  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The

subjective component requires that "a prison official knows of and disregards an

excessive risk to inmate health or safety."  *Id.* (citation and quotations omitted).  Only

the subjective component is at issue here.  *See* Docket No. 114 at 8 ("Defendants

concede [p]laintiff's injuries constitute a sufficiently serious medical condition.").

### A.  Mary Cardinas

Magistrate Judge Crews recommends that defendants' motion for summary judgment be denied as to Ms. Cardinas because a reasonable jury could conclude that Ms. Cardinas had subjective knowledge of plaintiff's injuries and ignored plaintiff's medical needs.  Docket No. 143 at 9.

Defendants object to this conclusion.  First, defendants argue that the magistrate judge based the recommendation on an incorrect interpretation of *Howard v. Waide*, 534 F.3d 1227 (10th Cir. 2008).  Docket No. 144 at 2, ¶ 2.  Second, defendants contend that the magistrate judge improperly relied on evidence not in the record to conclude that Ms. Cardinas's failure to evaluate plaintiff resulted in a delay in medical care that resulted in substantial harm.  *Id.* at 8, ¶ 14.

The Court agrees with defendants that they are entitled to summary judgment on plaintiff's claim against Ms. Cardinas.[3]  The recommendation focuses on whether the evidence shows that Ms. Cardinas should have been, or was aware, of plaintiff's medical needs.  While such a conclusion is necessary for a deliberate indifference claim, it is not sufficient.  "[T]he official must be both aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Thus, the magistrate judge was correct that the evidence in the record demonstrates that Ms.

---

[3] The Court does not, however, agree that the magistrate judge misapplied *Howard*.  The magistrate judge correctly cited *Howard* for the proposition that circumstantial evidence is permissible to demonstrate subjective knowledge and that a prison official "need not physically examine an inmate for a factfinder to conclude" that Ms. Cardinas had subjective knowledge of the risk of harm to plaintiff.  Docket No. 143 at 8.

Cardinas was aware of facts to draw the inference that plaintiff was injured –

specifically, plaintiff stating he was bruised and might have broken a bone in his leg.

However, there is no evidence to suggest that Ms. Cardinas in fact drew the inference

that a substantial risk of harm existed as to plaintiff and then disregarded that risk.

Rather, the only evidence is that plaintiff showed bruises to Ms. Cardinas and

told her that he believed that he might have broken something. *See* Docket No. 114 at

3, ¶ 7 (citing Docket No. 114-1 at 6). These facts alone are not sufficient to

demonstrate that Ms. Cardinas drew the inference that plaintiff was seriously injured.

Bruises can be caused by injuries less serious than broken bones and torn rotator

cuffs. Additionally, plaintiff's statement that he believed that he had a broken bone

does not demonstrate that Ms. Cardinas concluded that plaintiff was correct. The facts

show that Ms. Cardinas intended to do what any medical professional would do after

being presented with this information, namely, examine the patient to determine what

injury other than bruising was present. However, after informing plaintiff that protocol

dictated that she would not be able to examine both of plaintiff's complained of injuries

at once, plaintiff threatened Ms. Cardinas with a lawsuit. Given plaintiff's history of

volatility, the examination ended before Ms. Cardinas could fully inspect the injuries.

*See Wishneski v. Dona Ana Cty.*, 489 F. App'x 854, 861 (10th Cir. 2012) (unpublished)

("A delay in affording . . . medical care can result in [] a violation . . . if the defendant's

own conduct . . . was responsible for the delay in treatment."). Plaintiff presents no

disputed issue of material fact suggesting that Ms. Cardinas drew the inference that

there was a substantial risk of serious harm.

8

*Spencer v. Abbott*, 731 F. App'x 731 (10th Cir. 2017) (unpublished), is instructive. There, the Tenth Circuit analyzed and addressed three cases where the defendant had a "front-row seat" to the substantial risks to the plaintiff. *Id.* First, *Abbott* analyzed *Oxendine v. Kaplan*, 241 F. 3d 1272 (10th Cir. 2001), where, after a doctor reattached the plaintiff's severed finger, the doctor ignored that the plaintiff's finger had turned "jet black," the reattached portion had begun to fall off, and the doctor noted "necrosis" on the reattached finger, "but took *no* action." *Abbott*, 731 F. App'x at 742-43 (citing *Oxendine*, 241 F.3d at 1277-79).

Next, the Tenth Circuit looked to *Blackmon v. Sutton*, 734 F.3d 1237 (10th Cir. 2013), where prison officials knew of an eleven-year-old detainee's mental health issues and strapped him to a chair even though the officials knew such action "offered no help" and continued to deny him access to mental health treatment. *Abbott*, 731 F. App'x at 743 (citing *Blackmon*, 734 F.3d at 1244-46).

Finally, the court analyzed *Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014), where officers put an arrestee in a "carotid restraint" for three minutes, even though training materials warned that brain damage or death could occur if used for more than one minute. *Abbott*, 731 F. App'x at 743 (citing *Gomez*, 745 F.3d at 413-15). The officers carried the arrestee to a cell, placed him on the floor, and never checked his vitals. *Id.* The arrestee died in custody. *Id.*

The Tenth Circuit reasoned that, in these three cases, the substantial risks of serious harm "were remarkably obvious" and the defendant in each of them had a "front-row seat to observe" them. *Id.* at 744 (citations and quotations omitted). The

9

court contrasted these cases to the facts in *Abbott*.  There, a medical professional witnessed the defendant struggling to walk and the plaintiff "visually presented" to the defendant a prominent spasm in the plaintiff's upper back.  *Id.*  The defendant pressed on a trigger point, which provided immediate relief to the plaintiff.  *Id.*  As a result, the defendant diagnosed the plaintiff with muscle spasms, even though later that day the plaintiff suffered a severe stroke.  *Id.*

The Tenth Circuit concluded that these facts were not enough to demonstrate that the defendant knew of a substantial risk and drew the inference of that risk.  Rather than the plaintiff's "condition continuing to decline before" the defendant's eyes, like in *Oxendine*, *Blackmon*, and *Gomez*, the defendant provided the plaintiff with immediate relief, which led the defendant to believe that the plaintiff was fine and only suffering from muscle spasms.  *Id*.

*Abbott* and its analysis of *Oxendine*, *Blackmon*, and *Gomez* demonstrate that, on the facts here, more than bruises and plaintiff's opinion are needed to demonstrate that Ms. Cardinas in fact drew an inference of a substantial risk of serious harm. Ms. Cardinas saw bruising, listened to plaintiff's explanation of his injuries, and prepared to examine him.  She did not ignore any "remarkably obvious" risks of serious harm to plaintiff that would demonstrate that she in fact drew an inference regarding the seriousness of plaintiff's injuries.  *See id.*

The Court therefore agrees with defendants that summary judgment is appropriate as to plaintiff's claim against Ms. Cardinas.

**B.  Luis Cabiling**

Magistrate Judge Crews recommends that the Court grant defendants' motion for summary judgment against Dr. Cabiling because Dr. Cabiling's decision not to give plaintiff an MRI was a medical decision and plaintiff's disagreement with that decision does not rise to the level of deliberate indifference.  Docket No. 143 at 12-13.

Plaintiff objects to this conclusion, arguing that Dr. Cabiling is a general practitioner, making him unqualified to diagnose plaintiff's shoulder injury and, therefore, Dr. Cabiling should have referred plaintiff to an orthopedic specialist.  Docket No. 145 at 9-11.

The Court agrees that Dr. Cabiling is entitled to summary judgment.  Dr. Cabiling ordered two x-rays and provided plaintiff with cortisone shots on at least one occasion. Plaintiff's sole complaint is that Dr. Cabiling did not order an MRI and, thus, did not diagnose a rotor cuff injury soon enough.  But a disagreement on when or whether to order a diagnostic test, or a disagreement on the course of treatment, does not demonstrate that Dr. Cabiling was deliberately indifferent to plaintiff's medical needs. Whether a medical professional orders additional diagnostic techniques is a "classic example of a matter for medical judgment," and, as a result, a decision not to order a diagnostic test is "[a]t most . . . medical malpractice."  *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).  Additionally, "an inference of deliberate indifference cannot be drawn simply because the prisoner 'disagrees with a diagnosis or a prescribed course of treatment.'"  *Mathison v. Wilson*, 719 F. App'x 806, 809 (10th Cir. 2017) (unpublished) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)).

Plaintiff's argument that Dr. Cabiling is a generalist and therefore should have

11

referred plaintiff to a specialist is unpersuasive.  First, plaintiff's reliance on *Kikumura v. Osagie*,  461 F.3d 1269, 1295 (10th Cir. 2006), *overruling recognized by Rachel v. Troutt*, 764 F. App'x 778 (10th Cir. 2019), is misplaced.  *Kikumura* reviewed a motion to dismiss, not a motion for summary judgment and, as a result, was only reviewing the allegations contained in the complaint, not evidence adduced at the summary judgment stage.  Moreover, the standard that the Tenth Circuit utilized in that case is outdated; the standard asked whether a plaintiff can prove "no set of facts" in support of the allegations.  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008) (noting that the "no set of facts" test as used in *Kikumura* and other cases was overruled by the Supreme Court).  Even so, *Kikumura* does not support plaintiff's argument.  There, the plaintiff alleged that the defendant knew of the extent of plaintiff's injuries and purposefully failed to do a thorough examination because the defendant would then know that the plaintiff was injured.  *See Kikumura*, 461 F.3d at 1295.  The evidence in this case, and plaintiff's only allegation, is that Dr. Cabiling did not order an MRI when plaintiff requested one.  Moreover, Dr. Cabiling ordered a second x-ray and provided a cortisone shot to treat plaintiff.  Therefore, unlike *Kikumura*, there is no evidence that Dr. Cabiling refused to order an MRI solely to avoid a proper diagnosis.

Plaintiff's reliance on *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005), and *Ginest v. Bd. of Cty. Comm'rs*, 333 F. Supp. 2d 1190 (D. Wyo. 2004), is also unavailing.  In *Mata*, one of the defendant's "refused to provide . . . any medical attention."  427 F.3d at 756.  The Tenth Circuit reasoned that this refusal resulted in the defendant failing "to perform her gatekeeping role in potential cardiac emergency by not seeking a medical

12

evaluation." *Id.*  Here, the evidence shows that Dr. Cabiling did evaluate plaintiff, but disagreed on the type and course of treatment.  Thus, *Maiz* does not support plaintiff's contention.  Additionally, *Ginest* dealt with systematic deficiencies in maintaining medical records, not a failure to order further diagnostic testing.  333 F. Supp. 2d at 1205-06.  As a result, *Ginest* does not change the result here.

### C.  Judy Brizendine

There are no objections to the magistrate judges's recommendation as to the actions of Ms. Brizendine.  The Court has reviewed the non-objected portions of the recommendation to satisfy itself that there is "no clear error on the face of the record."  Fed. R. Civ. P. 72(b), Advisory Committee Notes.  Based on this review, the Court has concluded that this portion of the recommendation is a correct application of the facts and the law.

### D.  Plaintiff's Motion for Summary Judgment

Neither party objects to the magistrate judge's recommendation as to plaintiff's motion for summary judgment.  The Court has reviewed the non-objected portions of the recommendation to satisfy itself that there is "no clear error on the face of the record."  Fed. R. Civ. P. 72(b), Advisory Committee Notes.  Based on this review, the Court has concluded that this portion of the recommendation is a correct application of the facts and the law.

## IV.  CONCLUSION

It is therefore

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket

No. 143] is accepted in part and rejected in part.  It is further

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 114] is

**GRANTED**.  It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 117] is

**DENIED**.  It is further

**ORDERED** that this case shall remain open for the limited purpose of ruling on

the outstanding Motion for Sanctions [Docket No. 150].


DATED May 29, 2020.

BY THE COURT:


_____
PHILIP A. BRIMMER
Chief United States District Judge